McMILLAN, Judge.
The petitioner filed a petition for writ of habeas corpus in the Circuit Court of Jefferson County, pursuant to a request for temporary custody made by the officials of Putnam County, Georgia, according to the Uniform Mandatory Disposition of Detain-ers Act (“Interstate Agreement on Detain-ers”). The appellant is presently in the custody of the Alabama Department of Corrections, pursuant to his conviction of capital murder for a robbery murder. He was sentenced to death. In sentencing the appellant to death, the trial court considered the aggravating circumstance of two previous felony convictions involving the use or threat of violence to the person. § 13-11-6(2), Code of Alabama 1975 (re *1130 pealed 1980). Coulter v. State, 438 So.2d 336, 346-48 (Ala.Cr.App.1982), affirmed, 438 So.2d 352 (Ala.1983). These two prior convictions occurred in Georgia; however, in 1991, the Georgia courts set aside the convictions, thus nullifying the prior convictions that had been used to support this aggravating circumstance. Therefore, the •appellant filed a habeas corpus proceeding in federal court, based on a motion pursuant to Rule 60(b), Federal Rules of Civil Procedure, which he alleges entitles him to have his Alabama death sentence set aside. Johnson v. Mississippi, 486 U.S. 578, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988). In Johnson v. Mississippi, supra, the United States Supreme Court held that the Mississippi Supreme Court violated the petitioner’s Eighth Amendment rights against cruel and unusual punishment by allowing his death sentence to stand despite the fact that it was based partially on a vacated New York conviction.
The State of Georgia has re-indicted the appellant on those charges and seeks to have him transferred to Georgia in order to retry him. Thus, the appellant’s habeas corpus proceeding is the appellant’s attempt to block his transfer to Georgia for retrial.
In his petition for writ of habeas corpus, the appellant stated two grounds: that he was not lawfully charged by the Georgia indictment, alleging specifically that it indicates he was charged on September 16, 1991, instead of September 17, 1991; and that he would not be fairly and impartially tried in Georgia. The State argued, in its answer, that the clerical errors in the indictment cannot be raised in habeas corpus proceedings in the asylum state, and that the petitioner’s claim that he would not receive a fair trial in Georgia was without factual basis and was legally insufficient to support the issuance of a writ of habeas corpus. The State also filed affidavits and certified copies of records from Georgia to support its argument.
Thereafter, a hearing was held on the appellant’s petition. The appellant argued that he was entitled to relief because the Georgia indictment was invalid, referring to the date stamped on the indictment, and because he would not receive a fair trial. He also- raised a new claim at the hearing, that he was not a “fugitive from justice” because he did not leave Georgia involuntarily. At the hearing, the State objected to this latter, newly raised allegation, stating that it had not been timely raised. Alternatively, the State argued that the Interstate Agreement on Detainers Act does not require that the prisoner be a fugitive from justice in the sense that he must have fled from the jurisdiction. Furthermore, as to the latter arguments, the State submitted that these allegations can be raised only in the state requesting the temporary custody of the prisoner, i.e., Georgia. Following the hearing, the trial court made the following findings:
“1. The petitioner is a person subject to the provisions of the Interstate Agreement on Detainers.
“2. The demand for custody is in the proper form.
“3. There is an outstanding indictment pending against the petitioner in the requesting state.
“4. The petitioner is the same person whose custody has been demanded by the prosecutor.”
The trial court then ordered the petitioner’s transfer to the temporary custody of Georgia until his trial was completed.
The appellant argues that he cannot legally be transferred, because one of the prerequisites to such a transfer is proper proof of a lawful charging by indictment or other specified means, and he argues that Georgia's documentation fails to prove that he was “lawfully charged by indictment.”
As argued by the State, the appellant’s factual situation is to be governed by §§ 15-9-80 through 15-9-88, Code of Alabama 1975, the Interstate Agreement on Detainers Act, rather than §§ 15-9-20 through 15-9-65, Code of Alabama 1975, which the appellant relies on in his argument, and which include the extradition statutes. While the two acts deal with the delivery of a person charged with a crime from one state to another state, there are differences in the statutes’ requirements, *1131 as well as the persons to which these acts apply. The Interstate Agreement on De-tainers Act governs the transfer of people charged with crimes in one jurisdiction who are incarcerated in another jurisdiction. § 15-9-81, Code of Alabama 1975. Extradition proceedings govern the transfer of people who have committed a crime and then fled from justice in that state to another state, where they remain free. § 15-9-30, Code of Alabama 1975. A transfer pursuant to a detainer is temporary and is imposed only to permit prosecution on the charges that form the basis of the detainer. § 15-9-81, Article V(d), Code of Alabama 1975. When a person is transferred pursuant to extradition proceedings, however, he is not intended to be returned to the asylum state and, thus, the transfer is not temporary.
The procedures required for transferring a person pursuant to the Interstate Agreement on Detainers Act are quite different from those procedures required to extradite an individual. Because a person to be extradited is not already in prison, supporting documents are required by the requesting state for the person, and the asylum state is permitted to investigate the demand in order to determine whether the individual should be surrendered. See §§ 15-9-31 through 15-9-33, Code of Alabama 1975. Certain rights of arrestees sought to be extradited are outlined in § 15-9-38, Code of Alabama 1975. The procedures for transfer under the Interstate Agreement on Detainers Act depend on whether the disposition of the pending charges is sought by the prisoner or by an appropriate officer in the jurisdiction of the untried indictment or complaint. In the latter situation, a request for transfer is made as follows:
“Article IV.
“(a) The appropriate officer for the jurisdiction in which an untried indictment, information or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party state made available in accordance with Article V(a) hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated; provided, that the court having jurisdiction of such indictment, information or complaint shall have duly approved, recorded and transmitted the request; and provided further, that there shall be a period of 30 days after receipt by the appropriate authorities before the request be honored, within which period the governor of the sending state may disapprove the request for temporary custody or availability, either upon his own motion or upon motion of the prisoner_”
“Article V.
“(a) In response to a request made under Article III or Article IV hereof, the appropriate authority in a sending state shall offer to deliver temporary custody of such prisoner to the appropriate authority in the state where such indictment, information or complaint is pending against such person in order that speedy and efficient prosecution may be had....
“(b) The officer or other representative of a state accepting an offer of temporary custody shall present the following upon demand:
“(1) Proper identification and evidence of his authority to act for the state in whose temporary custody this prisoner is to be given.
“(2) A duly certified copy of the indictment, information or complaint on the basis of which the detainer has been lodged and the basis of which the request for temporary custody of the prisoner has been made.”
Thus, pursuant to Article IV of Interstate Agreement on Detainers Act, the appropriate officer in the receiving state is entitled to the prisoner when he presents a written request for temporary custody to the proper authorities in the sending state, so long as the court that has jurisdiction over the unsettled indictment or complaint has approved, recorded, and transmitted this request. Article V stipulates that the *1132 officer who is accepting the prisoner for the receiving state may be required to present proper identification and evidence of authority or a duly certified copy of the indictment, if the sending state so requests.
The procedures for gaining custody under the laws on extradition are more stringent and complicated in order to protect the rights of individuals who are presently free from constraint or incarceration. The purpose behind the simplicity of the procedures for transferring an individual pursuant to the Interstate Agreement on Detain-ers Act is to “encourage the expeditious and orderly disposition of ... charges,” to secure “speedy trial of persons already incarcerated in other jurisdictions,” and to resolve “uncertainties which obstruct programs of prisoner treatment and rehabilitation.” Article I, § 15-9-81, Code of Alabama 1975.
Because the appellant has been incarcerated in Alabama for over 10 years, he is subject to a detainer and the detainer requirements, and his reliance on the extradition requirements is misplaced. Therefore, his claim that the receiving state, Georgia, violated §§ 15-9-31 and 15-9-33, by failing to prove that he was “lawfully charged by indictment” and by failing to show that the supporting documentation was “authenticated by the executive authority making the demand,” is not relevant to his situation.
Moreover, the appellant’s claim that Georgia has failed to prove that he “fled from justice,” pursuant to §§ 15-9-30, and 15-9-33, Code of Alabama 1975, is not a proper claim under, or requisite of, the procedure for transferring a prisoner by detainer. Additionally, this claim was not raised in his petition for writ of habeas corpus, and therefore is untimely. Cf. Magwood v. State, 553 So.2d 635, 640 (Ala. Cr.App.1989) (“[f]or a claim for relief to be considered on the appeal of a coram nobis petition, it has first to be raised in the petition itself”).
In making his claim that he will not be fairly and impartially prosecuted in Georgia, the appellant again improperly cites to the laws for the extradition of a person not already incarcerated. § 15-9-32, Code of Alabama 1975. Even if this fairness concept were to be applied to the laws dealing with the Interstate Agreement on Detainers Act, such claims have been held by the United States Supreme Court to be improperly raised in the asylum state. See California v. Superior Court of California, 482 U.S. 400, 407, 107 S.Ct. 2433, 2438, 96 L.Ed.2d 332 (1987) (habeas corpus proceedings in the asylum state “are ‘emphatically’ not the appropriate time or place for entertaining defenses”). Marbles v. Creecy, 215 U.S. 63, 69, 30 S.Ct. 32, 33-34, 54 L.Ed. 92 (1909) (denial of habeas corpus relief to black petitioner who sought to prevent extradition to Mississippi, because he alleged he would not be fairly or justly treated, was held to be proper, because the court in the asylum state could assume that the demanding state would act legally and properly toward the “orderly administration of justice”). Sweeney v. Woodall, 344 U.S. 86, 90, 73 S.Ct. 139, 140, 97 L.Ed. 114 (1952) (petitioner claimed that he should not be transferred to Alabama because, in the past, his confinement had constituted cruel and unusual punishment and he alleged that future confinement would be similar; the supreme court held that such claims should only be raised in Alabama “where all parties may be heard, where all pertinent testimony will be readily available and where suitable relief, if any is necessary, may be fashioned”).
Therefore, we find no merit to the appellant’s petition and affirm the judgment of the circuit court.
AFFIRMED.
All the Judges concur.