These cases arise from the defendant's second conviction under § 13-11-2 (a)(3) for the capital offense of rape-intentional killing of a Mobile woman. The Court of Criminal Appeals reversed his first conviction because of the prosecution's improper closing argument. Whisenhant v. State,370 So.2d 1080 (Ala.Cr.App., 1979), cert. denied 370 So.2d 1106
(Ala. 1979).
At Whisenhant's second trial, the jury found him guilty, and that same jury, after hearing evidence presented at a sentence hearing, recommended the death penalty. The trial court subsequently imposed that sentence.
The Court of Criminal Appeals affirmed the defendant's conviction, but held that the State's attorney made improper comments during an opening statement at the penalty phase of the trial and, therefore, ordered that "[a] new jury will be empaneled to review the evidence as to the penalty phase."482 So.2d 1225. *Page 1243 
This Court granted cross-petitions for certiorari. Whisenhant's petition questions the validity of the conviction and the State's petition questions the validity of the Court of Criminal Appeals' judgment which required the court to hold a new sentence hearing. The parties argue the following issues in brief:
(1) Did the attorney general, during an opening statement at the sentence hearing, make improper references to prior criminal acts of the defendant when no evidence was subsequently introduced at the hearing regarding those prior acts?
(2) Should the trial court have granted the defendant's motion to provide $3,500 for psychiatric expert witness testimony?
(3) Did the trial court improperly strike prospective jurors who expressed a hesitancy to impose the death penalty?
(4) At the sentence hearing, did the attorney general's statement, "There is only one way, only one way you can assure that this man is in jail for the rest of his life. Put him on death row," constitute reversible error?
(5) Did the fact that four members of the jury knew of the defendant's prior conviction unduly prejudice Whisenhant?
(6) Should the trial court have given the submitted jury instruction that the jury could not recommend the death penalty unless they found beyond a reasonable doubt that the aggravating circumstances outweighed the mitigating circumstances?
(7) Should the trial court have given a submitted "mercy" jury instruction?
(8) The trial judge in Whisenhant's first trial sentenced him to death; should he have disqualified or recused himself from the second trial?
(9) Did the jury's failure to specify the aggravating and mitigating circumstances it considered during the sentence hearing destroy the validity of the sentence?
In the opinion reviewing Whisenhant's second conviction, Judge Tyson addresses the several issues the parties raised and which we have listed above. Whisenhant v. State, 482 So.2d 1225
(Ala.Cr.App. 1982). The Court of Criminal Appeals held that no reversible error occurred at the guilt phase of the defendant's trial, but, as we have previously stated, did find that the prosecution made improper and prejudicial statements at the trial's penalty phase and ordered that portion of the bifurcated proceeding repeated before a different jury.
 I
We first consider the state's argument that Whisenhant is not entitled to a new sentence hearing.
The record indicates that during his opening statement at the penalty phase of the trial, the state's attorney made references to criminal acts allegedly committed by Whisenhant on prior occasions. No party had introduced evidence of these alleged crimes during the guilt phase of the trial and the state failed to introduce any evidence regarding these prior criminal acts during the penalty phase of the trial. At the penalty phase, the defense rested without offering any evidence.
The state's attorney moved to reopen its case to allow him to introduce evidence of the prior criminal acts, but the trial court denied the motion. The state argued at trial, and now on appeal, that it reserved evidence regarding the prior criminal acts for use during its anticipated rebuttal to the defendant's evidence at the trial's penalty phase. The state argues that because Whisenhant followed the unexpected and unusual strategy of offering no evidence of mitigating circumstances at the trial's penalty phase, the equally unusual procedure of allowing the State to reopen its case was justified. The Court of Criminal Appeals held that remarks by the prosecutor which accuse the defendant of the commission of a crime other than that for which he is on trial and which are unsupported by any evidence in the case require reversal. Bevins v. State,39 Ala. App. 228, 229, 97 So.2d 572, cert. denied, 266 Ala. 695,97 So.2d 574 (1957); Moreland v. State, 373 So.2d 1259, 1262, 1263
(Ala.Cr.App. 1979), *Page 1244 Whisenhant v. State, 482 So.2d 1225 (Ala.Cr.App. 1982).
This is a correct statement of the law relative to ordinary trials to determine guilt, but it has never been applied to the penalty phase of a capital case. The state asks us to hold that the statements made by the state's attorney during the opening of the penalty phase constituted harmless error, and urges this Court to promulgate a rule of law which would authorize the application of the harmless error rule at sentence hearings in capital cases.
We cannot tell from a review of the opinion of the Court of Criminal Appeals whether that court applied the harmless error rule or not when it decided to order a new sentence hearing. The state, by requesting that we hold the harmless error rule to be applicable to a sentence hearing in a capital case, necessarily thinks that the Court of Criminal Appeals did not apply the harmless error rule, because the state contends that its sole argument in that court was that the prosecutor's remarks were harmless. The state asks us to remand the case to that court with directions that it consider the harmless error rule.
After consideration of the arguments, and as requested by the state, we hold that the harmless error rule does apply in capital cases at the sentence hearing, and we remand this cause to the Court of Criminal Appeals for consideration in light of our holding. See, generally, Washington v. Strickland,693 F.2d 1243, 1262, 1264-65 (5th Cir. 1982) (en banc) (violation of constitutional right to counsel during sentencing phase is harmless if state shows in context of all evidence that "it remains certain beyond a reasonable doubt that the outcome of the proceedings would not have been altered but for the ineffectiveness of counsel.")
In Seibold v. State, 287 Ala. 549, 559, 253 So.2d 302 (1971), the Court opined:
 "While we feel that Supreme Court Rule 45, Title 7, Appendix, Code 1940, Recompiled in 1958, is to be applied with great caution in capital cases, we see no reason why it should not be applied in a capital case where it is obvious that a defendant could not have probably been injured in a substantial right by a ruling."
This Court, in Williamson v. State, 258 Ala. 24, 61 So.2d 1
(1952), a capital case, applied the harmless error rule, but found that the error committed in that case was not harmless.
After remand, the Court of Criminal Appeals will not be precluded from considering "[o]ther questionable remarks made by the prosecutor and argued by appellant. . . ." In short, our holding regarding the asserted errors committed at the penalty phase of the trial is that the Court of Criminal Appeals can apply the harmless error rule in determining whether prejudicial error occurred at the penalty phase of Whisenhant's trial. Rule 45A, Ala.R.App.P.[1] Ex parte Womack, 435 So.2d 766
(Ala. 1983).
 II
We now consider Whisenhant's petition for certiorari and his argument that reversible error was committed during the guilt and penalty phases of his trial.
We have examined the opinion of the Court of Criminal Appeals, and we hold, as follows:
(1) We affirm that court's holding that the trial court did not err in denying Whisenhant's motion for funds to employ two named independent psychiatrists of Whisenhant's own choice in the matter of his sanity.
(2) We affirm the judgment of that court which holds that the trial court did not err in excluding certain jurors from the *Page 1245 
jury based upon their expressed opposition to the imposition of capital punishment.
(3) We affirm the Court of Criminal Appeals' judgment that no errors occurred when the trial court allowed four prospective jurors, who knew or were told that appellant had been previously convicted of the offense for which he was then being retried, to serve as trial jurors.
(4) The Court of Criminal Appeals did not err in holding that "the fact that due process protects an accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime charged is not relevant under Beck [Beck v. State, 396 So.2d 645 (Ala. 1980)] as to weighing aggravating and mitigating circumstances at the sentence determining phase."
(5) We affirm the holding of the Court of Criminal Appeals that the trial court did not err in refusing to instruct the jury that:
 "If you see fit, whether mitigating circumstances exist or not, you may recommend mercy for the defendant. This recommendation is solely in your discretion and not controlled by any rule of law. You may make such recommendation with or without a reason."
(6) We affirm the holding of the Court of Criminal Appeals that the trial court did not err in refusing to charge the jury, as follows:
 "In this proceeding, if your verdict is not unanimous the defendant will be sentenced to life imprisonment without the possibility of parole."
(7) The Court of Criminal Appeals correctly held that the trial judge was not disqualified because he was the same trial judge who had heard the case and imposed the death penalty in Whisenhant's prior trial.
(8) We hold, as did the Court of Criminal Appeals, that the jurors were not required to state which aggravating and mitigating circumstances they weighed in recommending Whisenhant's sentence of death.
Based on the foregoing, the judgment of the Court of Criminal Appeals is affirmed in all respects, except that portion which remanded the case to the trial court for a new sentence hearing.
AFFIRMED, IN PART; REMANDED WITH DIRECTIONS.
TORBERT, C.J., and FAULKNER, ALMON, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.
JONES, J., dissents.
[1] "In all cases in which the death penalty has been imposed, the court of criminal appeals shall notice any plain error or defect in the proceedings under review, whether or not brought to the attention of the trial court, and take appropriate appellate action by reason thereof, whenever such error has orprobably has adversely affected the substantial right of theappellant. (Adopted 10-2-78, eff. 12-1-78.)"